The first case up this morning is 412-0744, Cooper & Niebur, Inc. v. Midsate Insurance Company. For the appellant is Walker R. Philbert. Are you here, sir? Yes, I'm here. And for the appellee is Brad Edward. Yes, sir. Will you be presenting the entire argument, Mr. Edwards? Yes, I will. Okay. Thank you, Mr. Philbert. You may proceed, sir. Thank you, Your Honor. And thank you, Your Honors, and may it please the Court. Counsel. Walker Philbert for Hooper & Niebur. The appellant, obviously, we have a defamation per se case. And the first thing I'd like to talk about is the innocent construction rule, which I think is a wonderful rule. And our contention is the trial court misapplied the innocent construction rule when ruling on this matter on the defendant's summary judgment motion. Excuse me, counsel. Yes, Your Honor. With respect to the innocent construction rule, we don't get there, though, until the court determines that the comment is even defamation per se. Is that accurate? Well, the court is, as a matter of law, is to look at the totality of the circumstances around the statement. And if there is a reasonable construction to show that it was innocently made, then we never get there.  However, if looking at the totality, there is no reasonable explanation as for the innocence of that statement, and that there was not innocence, and that it may rise to the level of defamation, then it goes to step two, which goes to the fact finder, whether it be the judge or jury, as the case may be, to reach the ultimate determination as to whether it was defamation per se, and therefore not requiring any specific damages to be fled. And the statement we're dealing with is we're buying Hooper and Naber. Is that correct? Precisely, Your Honor. What's defamatory about that? Well, again, looking at the totality of the circumstances... Well, why don't we just start with just those first, I guess, that's six words. We're buying Hooper and Naber. Well, number one, it's false, and the reason we know it's false... No, no, that wasn't my question. I didn't ask you whether it was true or false. I said, what's defamatory about it? Well, again, we must look at the totality... If I said, Mr. Philbert's wearing a red and blue striped tie, do we have to look at the bigger picture to see in what context those words appeared to determine whether they're defamatory? No, Your Honor. But, again, looking at the totality there, we have to... I'm trying to figure it out. Or if we said, today for lunch, let's go to downtown Springfield. By the way, I'm not being facetious, Mr. Philbert. I don't understand, as I look at these six words, what in the world your claim is based upon that it's defamatory. Your Honor, we have a former employee of Hooper and Naber, Julie Kramer, who is now the owner of MidState Insurance and acting as the agent. They're in the same trade or profession. They're in the same town. She is communicating with another party in the same profession. That party, Linda Duke of the Shickadance Insurance Agency, there was a question as to why certain accounts were to be transferred from the Hooper-Naber account to the MidState Insurance account. And when that question came up, Julie Kramer said, we're buying Hooper and Naber. Okay. In the totality of the circumstances here, that was a false statement. Assuming it's false, why is it defamatory? Because it is making the innuendo that Hooper and Naber as a going concern no longer exists. That we own it now, so you don't have to deal with Hooper and Naber Insurance. Looking at it from a corporate standpoint, it fits nicely into the financial category. Because if Hooper and Naber doesn't exist, it obviously doesn't have any financials or the capability to conduct business anymore. And so from that standpoint, you're imputing a lack of ability for Hooper and Naber to continue, and it was prejudicial in that it was telling another member of the profession, hey, all you have to do is do business with us now, because in effect, the innuendo is Hooper and Naber doesn't exist. Now, counsel, we asked you to take a look at some additional cases. Is that correct? Yes, Your Honor. And what would you say the theme is of those cases with respect to allegations against a corporation? Well, if I may, the theme going all the way back to the Clifford and the Hayes cases, the common thread is talking about the credit worthiness of the company, the incapacity or the standing of the company to continue to do business. Then when we look at the VC and the American International Hospital cases, clearly we have defamation regarding the financial position of the company. And even though there was not a specific reference to the financial position of Hooper and Naber, it certainly gives the innuendo that, well, Hooper and Naber doesn't exist anymore. Now, who knows? That's for the fact finder to determine whether someone thought they were merged, whether they went out of business, whether we bought the assets of it. It clearly throws the innuendo that Hooper and Naber cannot do business anymore. And that goes right to the heart of the financial position of the carve-out of the corporate rule regarding the inability to continue in your trade or business. If I had picked up the phone, Your Honor, and made this statement, it would be a different story because I'm not in the insurance business. I'm not in that trade or profession. Defendants didn't like the example I used in my brief where Pepsi called Coke, GM called Ford, and said, hey, we acquired those companies. They'll start doing business with us. Well, let me do another hypothetical. I, Walker Philbert, attorney at law, pick up the phone and call all the insurance companies that refer insurance defense for Kyle Royster, and I say, hi, Walker Philbert here, send all your files to me now. And when they say why, I say because I bought Kyle Royster. Now, that's clearly sending the innuendo to all those companies that Kyle Royster is not in business anymore. I think that if they were in that position, they would take exception to that, Your Honor. But does it send the message that they're not in business due to dishonesty, due to financial embarrassment, dishonorable conduct, business methods or mismanagement? Does it send that message? Not specifically, Your Honor. All we know is that she's made the statement that we bought Hooper and Never. Who knows why? But it clearly sends the innuendo that for whatever reason they're out of business. They can't perform their business anymore. And that clearly fits into item four, even with the corporate exception rule regarding financial statements, that that innuendo has been made. This statement is not innocent within the context that it was made. And, again, the reason why we know it's false is that we have, this is a summary judgment, we have an affidavit from James B. Philbert, the owner of Hooper and Never, that clearly says I was not trying to sell this business to MidState Insurance. More telling, we don't have any affidavit from Julie Kramer or MidState Insurance saying that, well, what I said, what Linda Duke says that I said was inaccurate. So what we have here is a bald-faced lie to someone in the same profession that says send all those files our way. We own our competitor now. That is not an innocent construction. In fact, the thing that is interesting is when the first amended complaint was challenged on a motion to dismiss by defendants, even before we had the Linda Duke deposition of record and the affidavit of James B. Philbert of record, the trial court reached a conclusion as a matter of law that that statement, that allegation, was not innocent. That's in the court's order of October 27, 2010. You keep coming at this backwards from my perspective and perhaps the cases that were cited to you. A statement is defamatory per se if its harm is obvious and apparent on its face, and yet in your own argument you say it's innuendo. We don't get to the question of whether the innocent construction rule ought to apply until it is established that this is defamatory per se. No one is arguing about whether this is an unseemly thing to do, or whether it would make us angry, or whether maybe it's a bad thing or a bad business practice. The question is, is it defamatory per se? And at that point, it doesn't make any difference if it's true or false. The question is, does it fit into the category without regard to future innuendo and future implications? That might be the case if you weren't asking it to be deemed defamatory per se. But you're in a very special category. Absolutely, Your Honor. And I think that under the fourth prong, there's imputing a lack of ability of Hooper and Niebuhr to continue in business. We bought them up. There must be a going concern then. They had continued ability. But Hooper and Niebuhr is gone. We bought them up. So send all your information to us now. That's imputing a lack of ability for Hooper and Niebuhr. Well, that may be a tortious interference with a business relationship. Maybe it's a cause of action. The question is, is it defamatory per se? Well, again, Your Honor, we believe that it meets the defamatory per se requirements of the fourth prong because it imputes a lack of ability. Even the Hayes v. Mather case, Your Honor, which you had us look at from the 1880s, talks about it's for the court to decide whether a publication, in this case a communication, is capable of the meaning described to it and by an innuendo. And we clearly have an innuendo here that Hooper and Niebuhr, for whatever reason, is not in business anymore and is incapable of proceeding. And the reason why it's not innocent is when you look at the totality of the circumstances. This is not a statement made in a vacuum. But as Justice Connick points out, the point here of making you not jump certain hurdles when you're dealing with defamation per se is that it's obvious that you hear it and you automatically assume something bad about the person or the company that the statement is being made about. These are innocent words, everyday words. There's nothing inflammatory about the statement in and of itself, the face of the statement. Well, within the context, I respectfully disagree, Your Honor, because you do not require, when you're imputing an inability, to come up directly and attack the entity that you're attacking. You can do it by imputation. You can do it by innuendo. The impression that is left is that, well, Hooper and Niebuhr doesn't exist anymore, and so they cannot continue on in business. And that rises to enough of a level, because it's certainly not innocent, but it does rise to enough of a level within the fourth category of per se defamation to show that this question should go to the fact finder to determine the totality. And, by the way, Your Honor, I believe that the trial court, when they reached their decision, bought into the argument from defendants that Linda Duke didn't think anything of it, and so, therefore, there's no defamation. Well, let us suppose that I suggested that someone was infected with viral pneumonia. That's communicable. It's loathsome to me. I don't want to catch it. Is that defamatory per se? Your Honor. And you're going to tell me the reason they said that is because the individual who has that present disease has AIDS. Everybody knows that's the innuendo or the inference or the extra thing that's being pointed at. But, in fact, you say somebody's got pneumonia. No court in the world would say that that's defamatory per se. Well, Your Honor, again, when you say that a company that existed and was doing business, we just bought it, what does that convey to the reasonable person? That that company belongs to us now. It doesn't exist. They cannot continue in their trade or profession. They're gone. It's just like, you know, when anybody buys anybody out in a proper fashion, that entity ceases to exist. And this statement, well, why, you know, Linda Duke said, well, why are we transferring all these files to you? Well, we bought Hooper and Neighbor. That's sending the clear message that Hooper and Neighbor doesn't exist anymore. They're done. They're kaput. And so when you have a law of per se defamation that says statements imputing lack of ability or that otherwise prejudice a party in his or her profession or business, I believe it goes right to the point, Your Honor, that you're sending the message that Hooper and Neighbor doesn't exist, so therefore you must do business with us now. And, again, this is not taken in a vacuum. It was done to parties within the profession, mid-state, Hooper and Neighbor, our competitors, same profession, same town. The statement itself is not innocent, and the statement itself fits into the fourth prong of per se defamation by imputing that inability. To get to the point I was also making, it really doesn't matter at that level, as a matter of law, what Linda Duke or any other third party thinks. Now, what Linda Duke thinks might be probative to the fact finder in some way, shape, or form, but it certainly is not dispositive as to the first step as to whether we have a per se defamation statement by law. If that were the case that what Linda Duke thought was important at this stage, then, like in the newspaper case, you'd have to go out and find out what every reader of the newspaper that day may or may not have thought before you can even get to the fact finder. So we believe that we have per se defamation in the fourth prong, and even with corporation exception, it goes to their financial ability to continue performing their work. Within the context, the statement was not innocent, and so therefore, as a matter of law, this question should go to the fact finder for ultimate determination. And so therefore, at a minimum, we would ask the court to reverse the finding of the trial court as to the summary judgment, find that since this matter should go to the fact finder, that we have a genuine issue of material fact, and remand the case for such hearing. Thank you, counsel. Mr. Elwood? Thank you, and good morning. Brad Elwood on behalf of MidState Insurance, and as I mentioned, Doug Bittner is here as well. He was a trial counsel in this case. When I hear somebody say to me that a business is being bought, one of the first things that crosses my mind is, I hope they got a lot of money from the business. That's probably a good thing. Maybe they've retired. This statement by itself, and I know I'm jumping ahead a little bit in this comment, but this statement is a harmless statement. The area of defamation that we're dealing with here today, the per se category, is meant to cover cases that, as Your Honor pointed out, are obviously harmful. And a simple statement that we're buying Hooper and Niebuhr doesn't convey anything that's obviously harmful. And I think that's what the trial court looked at in this case when it said that statement is not defamatory. And as Your Honor pointed out, the first step we have to ask is, is it a defamatory per se statement? If it is, then we can ask our question, does the innocent construction rule apply? Now, counsel made a comment that, well, because we think it's defamatory, we get into the innocent construction rule, and then all of a sudden this defaults to a jury question. The coal gas case that we cited says that that's a question of law for the trial court to decide. So we hear properly, we don't have a question, a fact that we need to push back to the trial court on whether or not there's innocent construction. Now, one thing that I think I find troubling, I know that the trial court made reference to the fact that Duke didn't find this statement to be offensive, out of the ordinary. I think she said it was a non-issue. I hear this type of stuff all the time. And counsel said, no, it's not subjective, because the purpose of defamatory defamation per se is to say, well, it's so bad I don't have to prove my special damages. Well, I think that that statement is nevertheless, and he's right about the general law, but I think that statement by Duke in her deposition is critical here, because she's the person that this statement was made to. And she didn't respond by saying, geez, that's defamatory. I have a terrible impression of this company now. So even if the court were to say, well, that's defamatory per se, we've got at least one person in this case, who is the audience and the recipient of this comment, who says, it wasn't defamatory. No, she doesn't say it wasn't defamatory, but she says it was a non-issue. And I think that's incredibly important for this court to take a look at, even if we throw the defamation per se question aside. The innocent construction rule asks us, are there two meanings to this statement? And I think in this case, as the court's pointed out with these questions, there clearly are two meanings to this case, to this statement. Now, the other thing that counsel points out that I'd like to discuss for a quick second is this comment about this 2010 order at page 132 of the record. There's no question that when the trial court entertained the original motion in this case, which was a motion to dismiss, the court said the purported conversation cannot be construed as an innocent communication. But it also said that that statement was based on the allegations of the complaint. As this court knows, when you file a motion to dismiss, you have to assume the truth of the allegations applied. Well, under the standards that were applicable to that motion, the court made the finding that it had to make that. But we're on summary judgment. And the federal court has a nice way of saying it. They say, this is your put-up-or-shut-up moment. Well, I think the same thing applies here. When we file our summary judgment, their obligation is to come in and say, we pled this. Here's our evidence that's going to put that. And then the court looks at it and says, question of fact, do we have enough to take this to the jury? In this case, when we ask ourselves where's the put-up-or-shut-up, it isn't there. Did you, at the trial level, file a motion for sanctions under Rule 137? I don't believe so. Why not? I do not know. I don't know why those weren't. I know there are a variety of reasons why counsel may or may not file those. I've never had that conversation with anyone. Speaking for myself, Mr. Elwood, I find this cause of action and this appeal to be utterly outrageous. And I invite you to file a petition for sanctions under Rule 375. This strikes me as the post-it boy for frivolous litigation. Utterly groundless. Thank you. If I may make one comment, and then I'll conclude. Your Honor asked a question about what the theme of your case was, and I think the theme is clear. It requires a clear statement of harm. We don't have that here. Thank you. Thank you, counsel. Mr. Philbin. Thank you, counsel. I've enjoyed working with you. Your Honors, thank you very much. In light of the Court's comments, I have nothing further to say. I stand at my argument. Thank you, counsel. Thank you, Mr. Chairman. I would advise him to be in recess for a few moments.